IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KATIE MILLER,<br><br>                     Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>                     Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case #4:19-cv-00029-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff Katie Miller's appeal from the decision of the Social Security Administration denying her application for disability and disability insurance benefits. The Court held oral arguments on November 13, 2019. Having considered the parties' arguments, the record, and relevant case law, the Court will affirm the administrative ruling.

**I. STANDARD OF REVIEW**

This Court's review of the administrative law judge's ("ALJ") decision is limited to determining whether his findings are supported by substantial evidence and whether the correct legal standards were applied.[1] "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[2] The standard "requires more than a scintilla, but less than a preponderance."[3] The ALJ is required to consider all of the

---

[1] Rutledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000).

[2] Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

[3] Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

evidence, although he or she is not required to discuss all of the evidence.[4] If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed.[5] The Court should evaluate the record as a whole, including the evidence before the ALJ that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II. BACKGROUND

The Court will briefly address the procedural history, the medical history, the hearing, and the ALJ's decision.

### A. PROCEDURAL HISTORY

On October 22, 2015, Plaintiff filed an application for disability and disability insurance benefits, alleging disability beginning on September 28, 2015.[8] The claim was denied initially and upon reconsideration.[9] Plaintiff then requested a hearing before an ALJ, which was held on June 21, 2018.[10] The ALJ issued a decision on August 15, 2018, finding that Plaintiff was not disabled.[11] The Appeals Council denied Plaintiff's request for review on March 18, 2019,[12] making the ALJ's decision the Commissioner's final decision for purposes of judicial review.[13]

---

[4] Id. at 1009–10.
[5] Richardson, 402 U.S. at 390.
[6] Shepherd v. Apfel, 184 F.3d 1196, 1199 (10th Cir. 1999).
[7] Qualls v. Apfel, 206 F.3d 1368, 1371 (10th Cir. 2000).
[8] Administrative Record, ECF No. 9 (hereafter "R.") at 190.
[9] R. at 15.
[10] Id.
[11] Id. at 15–25.
[12] Id. at 1–6.
[13] 20 C.F.R. § 422.210(a).

**B. MEDICAL HISTORY**

In her application for disability, Plaintiff complained of neck and back pain related to multiple car accidents, as well as carpal tunnel syndrome in both hands and chronic depression.[14] Plaintiff stated that she was unable to garden, cook, bake, or drive as she used to before her neck and back injuries.[15] Plaintiff stated that on some days she could crochet or sew for a short period, but on other days, her pain prevented her from washing and dressing.[16] Plaintiff further indicated that she "used to get out and socialize," but that she was now limited from doing so.[17] Plaintiff also stated that the pain medication she took made her memory "spotty" and kept her from concentrating.[18] However, she stated that she was able to do minor cleaning, occasional laundry, and household shopping once or twice weekly, as well as watching television and reading.[19]

The plaintiff's husband, Steven Miller, submitted a letter, in which he stated that Ms. Miller suffers from constant pain, fatigue, and insomnia.[20] He stated that Plaintiff spends most of her time in her recliner, including sleeping, and has difficulty sitting or standing for longer than an hour.[21] Further, Mr. Miller stated that because of her symptoms, Plaintiff can no longer cook, do household chores, or engage in social activities.[22] Jean Pyper, a friend of the plaintiff,

---

[14] R. at 233.
[15] Id. at 234.
[16] Id.
[17] Id.
[18] Id. at 235.
[19] Id. at 238–39.
[20] Id. at 288.
[21] Id.
[22] Id.

also submitted a letter, in which she states that she never sees Plaintiff any more because "she is no longer able to leave the house."[23] Ms. Pyper states that Plaintiff is usually too depressed even to speak on the phone, and no longer attends dinners or social gatherings, as she has become a "recluse."[24]

     Plaintiff has a history of neck and back pain. Plaintiff reported that her neck pain began after she fell off of a motorcycle more than thirty years ago, and worsened after multiple later motor vehicle accidents.[25] Plaintiff had a fusion surgery at C4-C5 in approximately 2005 and underwent physical therapy for a short time thereafter.[26] X-rays of the cervical spine taken in 2009 revealed that the cervical spine was stable post-fusion, and more recent x-rays do not display any acute or active process.[27] Plaintiff reports the onset of her back pain somewhat later, between twelve and twenty years ago, and has not sought any surgical intervention for this.[28] Lumbar x-rays performed in 2007 displayed a stable grade 1 anterolisthesis of L5 on S1; more recent x-rays of the region showed a grade 1 spondylolisthesis of L5 on S1, as well as degenerative disc disease.[29] Plaintiff sees a pain management provider, and takes prescription Percocet and methadone.[30]

---

[23] Id. at 289.
[24] Id.
[25] Id. at 436-7.
[26] Id.
[27] Id. at 298, 547.
[28] Id. at 436-7.
[29] Id. at 299, 301, 435.
[30] Id. at 286.

Plaintiff underwent a psychological examination with Dr. Tim Kockler, Ph.D., on December 26, 2015.[31] Dr. Kockler diagnosed Plaintiff with major depressive disorder recurrent with anxious distress, but indicated that her mental status was in the average range for her age and education, and that questioning did not reveal any significant impairment to her daily functioning.[32] On December 31, 2015, Lindi Meadows, Ph.D., a state agency psychologist, reviewed Plaintiff's medical records and opined that her mental health impairments were non-severe.[33] Joan Zone, Ph.D., another state agency psychologist, affirmed the decision of Dr. Meadows.[34]

Plaintiff was examined by Dr. Fakoya on January 23, 2016.[35] Dr. Fackoya diagnosed her with cervicalgia with some limitation in ranges of motion and lumbosacral degenerative joint disease.[36] Based upon his examination, Dr. Fackoya opined that Plaintiff did not have any lifting, carrying, or walking restrictions, but would be limited to sitting four hours in an eight-hour workday, and standing four hours in an eight-hour workday.[37]

On February 22, 2016, Francis Yamamoto, M.D., a state agency physician, reviewed Plaintiff's medical records and opined that Plaintiff could lift and carry 50 pounds occasionally

---

[31] Id. at 547-52.
[32] Id.
[33] Id. at 61–3.
[34] Id. at 77.
[35] Id. at 436-43.
[36] Id.
[37] Id.

and 20 pounds frequently, and could stand, walk, or sit six hours out of an eight-hour workday.[38] Lewis J. Barton, M.D., another state agency physician, later agreed with this conclusion.[39]

On October 26, 2015, Plaintiff's treating physician, Thomas Callahan, M.D., completed a Treating Source Statement of Physical Limitations form.[40] Dr. Callahan opined that Plaintiff was only capable of sedentary work because of her conditions, but that her symptoms were severe enough to cause her to operate at less than 50% efficiency in a full-time job.[41]

On January 12, 2018, Plaintiff's pain management provider, Mark Udy, PAC, completed a Physical Residual Functional Capacity form.[42] Mr. Udy opined that Plaintiff could not lift or carry more than ten pounds, could not sit for longer than thirty minutes at a time (up to three hours in an eight-hour workday), could not stand for more than ten minutes at a time (up to two hours in an eight-hour workday), and would work at less than 50% efficiency.[43]

### C. HEARING TESTIMONY

An initial hearing was held on June 21, 2018. Plaintiff stated that prior to her alleged disability date, she had worked for Wal-Mart at their distribution center in several different positions, including janitorial work and quality assurance.[44] Plaintiff stated that her back and neck pain made it difficult to do her work because she experienced muscle spasms, and felt that

---

[38] Id. at 67.
[39] Id. at 75.
[40] Id. at 395-6.
[41] Id.
[42] Id. at 542-45.
[43] Id.
[44] Id. at 37.

6

any kind of bending could bring them on.[45] After work, Plaintiff stated that she would get home with her "whole spine throbbing," and that she experienced "agony all day long."[46] Plaintiff testified that she took prescribed pain medication, and had participated in physical therapy in the past, as well as steroid injections.[47]

Plaintiff further testified that she had difficulty sleeping, and generally had trouble remaining in one position (sitting or standing) for any extended period.[48] Plaintiff stated that she took care of chickens at her home, and cared for her small dog.[49] Additionally, plaintiff testified that although she had experienced depression on and off for years, she had never really been treated for it because she did not want to take drugs, and the symptoms had not been "that bad" lately.[50]

### D. THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 28, 2015.[51] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disease of the cervical, thoracic, and lumbar spine/cervicalgia and lumbago.[52] At step three, the ALJ found that Plaintiff did not have an

---

[45] Id. at 41.
[46] Id.
[47] Id.
[48] Id. at 44.
[49] Id. at 42-43.
[50] Id. at 46.
[51] Id. at 17.
[52] Id.

7

impairment or combination of impairments that met or equaled a listed impairment.[53] At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of light work, could perform her past relevant work as inspector general as generally performed in the national economy, and, therefore, she was not disabled.[54]

### III. DISCUSSION

Plaintiff raises one issue in her brief: Whether the ALJ erred in finding at step four that Plaintiff could perform past relevant work, and was therefore not disabled.

### A. STEP FOUR

Step four of the sequential analysis is broken down into three phases. In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ must determine whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.[55]

The ALJ is permitted to rely on information provided by the vocational expert in making these findings.[56] Further, to make these specific findings, the ALJ must obtain "adequate factual information about those work demands which have a bearing on the medically established

---

[53] Id. at 19-20.

[54] Id. at 24.

[55] Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003), citing Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir.1996).

[56] Id. at 1025.

limitations."[57] At step four, the claimant bears the burden of proving that she cannot perform her past relevant work.[58]

Importantly, if a claimant cannot perform "excessive" job duties actually required in her former job, but can perform the job duties as generally required by employers throughout the economy, the claimant should be found "not disabled."[59]

### B. PLAINTIFF's ARGUMENT

Plaintiff argues in her opening brief that the ALJ failed to conduct the proper inquiry into the demands of Plaintiff's past work.[60] Specifically, the plaintiff alleges that the ALJ failed to develop the record, failed to make the required findings as to the mental and physical demands of her past relevant work, and improperly used the DOT listing cited by the vocational expert to categorize Plaintiff's past relevant work.[61] Plaintiff alleges that if she cannot perform any of her past relevant work, and is limited to light work by the RFC determined by the ALJ, Medical-Vocational Guideline 202.02 would direct a finding that she is disabled.[62]

Plaintiff does not challenge the ALJ's finding that her RFC permitted her to perform the full range of light exertional work.[63] Further, there is no disagreement between the parties that she could not return to her past relevant work as actually performed, at the medium exertional

---

[57] Barnes v. Colvin, 614 F. App'x 940, 943 (10th Cir. 2015), citing Winfrey, 92 F. 3d at 1024.
[58] Andrade v. Sec'y of Health & Human Servs., 985 F.2d 1045, 1050 (10th Cir. 1993)
[59] SSR 82-61, 1975-1982 Soc. Sec. Rep. Serv. 836 (S.S.A. 1982).
[60] Plaintiff's Opening Brief, ECF No. 17 (hereafter "Pl. Br."), at 5.
[61] Id.
[62] Id. at 9-10.
[63] Id. at 5.

9

level. However, she alleges that the record does not contain adequate findings as to the demands of her past relevant work.[64]

Plaintiff identifies the controlling issue as whether the DOT listing for inspector, general, which is generally performed at a light exertional level, correctly classifies her past relevant work.[65] She argues that the ALJ should not have relied on the VE's classification of her previous "quality assurance" position as matching the DOT listing for inspector, general, as the listing differs substantially from the job plaintiff was actually doing at the Wal-Mart warehouse.[66] Specifically, plaintiff's previous job duties required lifting boxes at a medium exertional level, and opening these boxes to check if the correct freight was inside.[67] However, the inspector, general DOT listing describes a person who "inspects material and products . . . using fixed or preset measuring instruments . . . Verifies specified dimensions of product or material, using inspection equipment such as fixed gauges, templates, and preset micrometer, vernier height gauges, and dial inspector."[68] Plaintiff points out that she was not using any instruments or gauges, rather, she was lifting and opening boxes in a warehouse.[69] Plaintiff does not present any more appropriate DOT listings to describe her past relevant work.

---

[64] Id. at 6.
[65] Plaintiff's Reply Brief, ECF No. 21 (hereafter "Pl. Rep. Br"), at 2.
[66] Id. at 5.
[67] Id.
[68] Id.
[69] Id.

## C. DEFENDANT'S ARGUMENT

The Commissioner argues in the answer brief that Plaintiff held the burden of proving that she could not return to her past relevant work.[70] Again, there is no dispute about the first phase of the three-phase analysis required at step four; the parties agree that the ALJ found that the plaintiff was medically limited to lifting and carrying 20 pounds occasionally, and 10 pounds frequently, and assigned her an RFC for the full range of light work.[71] Defendant argues that since this was the only medical limitation included in the RFC, the ALJ only needed to obtain enough information about the plaintiff's past relevant work to determine how much she was required to lift and carry in that position.[72] Finally, the defendant asserts that the ALJ sufficiently compared plaintiff's RFC with the demands of the inspector, general DOT listing identified by the VE, and found that Plaintiff could perform this job as generally performed even with her lifting and carrying limitations.[73]

Addressing whether the VE properly classified Plaintiff's past relevant work as matching the inspector, general DOT listing, Defendant argues that the ALJ is permitted to rely upon the DOT's description for the plaintiff's job category as "presumptively applicable" to her prior work.[74] Moreover, to overcome the presumption, Plaintiff has to show that her previous job duties were so distinct from the duties of the inspector, general listing that they would constitute a different line of work.[75] Defendant states that both the inspector, general listing and Plaintiff's

---

[70] Defendant's Answer Brief, ECF No. 19 (hereafter "Def. Br."), at 1.
[71] Id. at 3.
[72] Id. at 7.
[73] Id.
[74] Id. at 8.
[75] Id. at 9.

described quality assurance work "encompass inspecting/checking materials to ensure they satisfy designated expectations."[76]

## IV. ANALYSIS

The ALJ must make specific findings about each of the three phases in step four; the ALJ determined Ms. Miller's residual functional capacity in the decision.[77] The ALJ must obtain adequate information about those work demands which have a bearing on the medically established limitations[78]—here, the only limitation in the RFC was the lifting restriction, and the ALJ elicited testimony about how much Plaintiff had to lift at her previous employment.[79] Finally, the ALJ is required to compare the demands of the claimant's past relevant work to the limitations of the residual functional capacity. The ALJ appears to have cited the vocational expert's testimony approvingly, and determined that the claimant could perform the job of inspector, general as actually performed (at the light exertional level).[80]

Regarding plaintiff's past relevant work, the VE testified that she used a close match in the DOT to categorize Plaintiff's quality assurance work as matching the listing for inspector, general, and that it is generally performed at the light exertional level in the national economy.[81] Plaintiff's attorney did ask the VE how closely the inspector, general job conformed to how the claimant described her job, and the VE testified that it was "very close," and answered

---

[76] Id.

[77] R. at 20-24.

[78] Wells v. Colvin, 727 F.3d 1061, 1075 (10th Cir. 2013)

[79] R. at 38-39.

[80] Id. at 24.

[81] Id. at 51.

affirmatively when asked if it would involve the same work processes.[82] The ALJ is permitted to rely on the VE's testimony in making the required findings at step four.[83] Here, it appears that the ALJ permissibly relied on the VE's testimony that the inspector, general listing was a match for the plaintiff's previous quality assurance job.[84] "[A]n ALJ's reliance on the DOT 's description of [past relevant work] or a VE's description of the exertional and skill level of PRW is sufficient to meet the ALJ's burden at Phase Two."[85] The ALJ does have to investigate conflicts between the DOT and the VE's testimony, but if a conflict is not apparent or has not been identified, then no inquiry is required.[86] The transcript of the hearing does not indicate that there was any conflict apparent in the VE's categorization of Plaintiff's past relevant work, so it was not required of the ALJ to further inquire.

Moreover, Defendant correctly argues the description contained in the DOT job listing is presumptively applicable to the plaintiff's prior work, and the burden is on the plaintiff to rebut this presumption.[87] Plaintiff's counsel did inquire as to how the inspector, general position compared to Ms. Miller's description of her past job duties, and did not attempt to highlight any discrepancies at that time to overcome the presumption.[88] The claimant must show that "the duties of h[er] prior job were sufficiently distinct from the duties of a[n] [inspector, general] as

---

[82] Id. at 52.

[83] Doyal, 331 F.3d at 760.

[84] R. at 24.

[85] Gorian v. Colvin, 180 F. Supp. 3d 863, 875 (D.N.M. 2016). This case cites to several Tenth Circuit cases in support of this position.

[86] SSR 00-4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

[87] Andrade, 985 F.2d at 1052.

[88] R. at 52.

described in the Dictionary to constitute a different line of work."[89] The record does not show that Plaintiff made this showing before the ALJ, and plaintiff has not suggested any more suitable job description from which any determination of her past relevant work's general exertional level can be made, even as she argues that the DOT description used by the ALJ does not correctly describe her past employment. The ALJ's decision that plaintiff could return to her past relevant work was supported by substantial evidence (by more than a scintilla of evidence, even if that evidence would perhaps amount to less than a preponderance).

## V. CONCLUSION

Accordingly, the Court hereby AFFIRMS the decision below.

DATED this 05th day of December, 2019.

BY THE COURT:

Paul Kohler
United States Magistrate Judge

---

[89] <u>Andrade</u>, 985 F.2d at 1052.